# BUD POWELL v. THE STATE.

## IN COURT OF APPEALS, AUSTIN TERM, 1884.

*Constitutional Law—Construction.*—It is for the courts, and not the legislature, to declare the proper construction to be given to terms employed in the constitution.

*Same—Jeopardy.*—Before its use in the constitution, the meaning of the term "jeopardy" had been settled by judicial decisions, and the legislature has no authority to give it another and a different meaning.

*Same.*—Art. 20, C. C. P., in so far as it attempts to limit or restrict the meaning of the term "former jeopardy" is unconstitutional and not binding on the courts.

*Former Jeopardy—Plea of*—See the opinion of a plea of former jeopordy held good and a bar to another trial for the same offense.

*Cases Overruled.*—Mosely v. State, 33 Texas, 671; and Taylor v. State, 35 Texas, 97.

*Caseses Approved.*—Parchman v. State, 2 Tex. Ct. App. 228; and Vestal v. State, 3 Tex. Ct. App., 652.

Appeal from Aataseosa county.

In this case appellant was twice placed upon his trial under the indictment at the same term of the District court. The result of the first trial and the causes are shown by defendant.s bill of exceptions, which recites the facts as follows:

"Be it remembered that on the trial of this cause the same was submitted to the jury on the evidence, argument of counsel, and the charge of the court, and the jury retired to consider of their verdict, and on the same day after being out about one hour and a half, returned into court and stated they could not agree; that they could not agree in a month; and the court asked them if it was a question of law or a vuestion of evidence, and they stated it was a question of fact and law; and the court asked them how they were divided as to numbers, and they stated eight to four; and the court asked the state's attorney and the defendant's counsel if they were willing that the jury be discharged, and the state's counsel consented, but the defendant, through counsel, objected; and the jury again retired, and after they had been out a second time for one hour they again came into court and stated they could not agree, and in reply to the question of the court as to the possibility of agreeing, the oreman stated that there was no possibility of their agreeing on a

verdict; and the court again asked the state's attorney and defendant's counsel if they were willing that the jury be discharged, and defendant objected. The jury had been out one hour longer, and thereupon the court discharged the jury—to all of which action and ruling of the court defendant excepted and tenders his bill of exceptions, etc."

In explanation of the ruling and action the learned judge states that "the court held that the jury had been out a reasonable time, and was satisfied from their statements that they had an honest difference of opinion and that the case was one upon which jurors might very reasonably differ in opinion, as the case had not been in the court's opinion fully developed on either side, or as full as it might be, and that the evidence adduced was such that might reasonably lead to different conclusions. Besides, some of the jurors having been kept out on a case the night before on another case, the court did not feel disposed to compel them to be kept over another night when the court believed their disagreement was in good faith and unchangable." When the case was called afterwards at the same term for a second trial the defendant pleaded "former jeopardy" on account of the facts above stated in the bill of exceptions, and asked that he be discharged, and the further prosecution of the case be dismissed.

With regard to this plea the court instructed the jury to find the same untrue, and so state in their verdict whether they convict or acquit the defendant and the jury returned their verdict upon said plea according to the instruction. Was the plea a good one for the former jeopardy, and should the same have been sustained? Our constitution provides that "no person for the same offense shall be twice put in jeopardy of life or liberty, nor shall a person be put again upon trial for the same offense after a verdict of not guilty in a court of competent jurisdiction." (Const. sec. 14.)

A similar provision is contained in article v, amendments to the Constitution of the United States, and with slight changes of verbiage, but in substance the same may be found in our state constitutions from that of 1845. (Const. 185, art. 1, sec. 12; Const. 1866, art. 1, sec. 12.)

What is the meaning of the word jeopardy, as used in the constitution? An attempt to define the meaning was made by the legislature in the adoption of the Penal codes in 1856. The eighteenth

article of the original Code of Criminal Procedure was in these words: "No person for the same offense can be twice put in jeopardy of life or limb. This is intended to mean that no person can be subjected to a second prosecution for the same offense after having once been prosecuted in a court of competent jurisdiction and *duly convicted*." (Italics ours). This article was followed by one explaining its meaning in these words: "The foregoing article will exempt no person from a second trial who has been convicted upon an illegal indictment or information and the judgment thereupon arrested, nor where a new trial was granted to the defendant, *nor where a jury has been discharged without rendering a verdict, nor for any cauze other than that of a legal conviction.* (Art. 19, Pas. Dig., arts. 2484, 2485.)

In the revision of the codes in 1879, article 18 *supra*, is entirely omitted, but article 19 is re-enacted almost literally, as follows: "By the provision of the constitution no person shall be exempt from a second trial from the same offense who has been convicted upon an illegal indictment or information, and the judgment thereupon arrested; nor where a new trial has been granted to the defendant, nor where a jury has been discharged without rendering a verdict; nor for any cause other than that of a legal conviction." (C. C. P. art. 20.) From these provisions, it is most evident that if it could so be done, a fixed and definite meaning has been given by the legislature to the words, "former jeopardy," and that meaning, as disclosed, is that "former jeopardy" is nothing short of a prior legal conviction. Had the legislature authority to interpret and declare the meaning of a constitutional provision? "The constitution of a state is higher in authority than any law or order made by anybody assuming to act under it." "Every positive direction in it contains an implication against every thing contrary to it, or which would frustrate or disappoint the purpose of that provision."

"Aside from the special limitations of the constitution, the legislature can not exercise powers which are in their nature essentially judicial or executive. These are by the constitution distributed to other departments of the government. It is only the legislative power which is vested in the Senate and assembly." (Cooley, Const. Lim. (4 Ed), 108.) "The legislative power, we understand, to be the authority under the constitution to make laws, and to alter and repeal them. Laws in the sense in which the word is here employ-

ed are rules of civil conduct or statutes which the legislative will has prescribed." (Cooley, p. 110.)

With regard to its own acts the "legislation is either introductory of new rules, or declaratory of existing rules. A declaratory statute is one which is passed in order to put an end to a doubt as to what is the common law or the meaning of another statute, and declares what it is and ever has been. (Cooley, p. 112). But the legislature has no authority to interpret or declare a matter of constitutional construction, nor can it set rside a construction of a constitutional provision which has become fixed and settled by judicial determination. With regard to its own enactments the rule is that "as the legislature can not set aside the construction of law already applied by the courts to actual cases, neither can it compel the courts for the future to adopt a particular construction of a law which the legislature permits to remain in force. To declare what is or has been is a judicial power; to declare what the law shall be is legislative. One of the fundamental principles of all our governments is that the legislative power shall be separate from the judicial." (Cooley, p, 115.)

Before their use and adoption into our constitution of 1845, the term "former jeopardy" had received their meaning and significance from judicial decisions. True, there had been a diversity of views and a contrariety of decisions, still if there had been no certainty with regard to the matter it was not for the legislature but the courts to decide it, and the attempt upon the part of the legislature would have ben but a usurpation of authority which the courts would not hesitate to disregard if not in harmony with thir opinion. As before stated, however, the meaning of the term "former jeopardy" has, in our opinion, been fixed long before the words were used in the constitution. And whatever may be the difference of opinion entertained the decided weight and respectability of authority has universally held to the construction given by Mr. Cooley in his great work on Constitutional Limitations. He says "a person is in legal jeopardy when he is put upon trial before a court of competent jurisdiction, upon indictment or information which is sufficient in form and substance to sustain a conviction, and a jury has been charged with his deliverance; and a jury is said to be thus charged when they have deen empanneled and sworn. The defendant then becomes entitled to a verdict which shall constitute a bar to a new

prosecution, and he cannot de deprived of this bar by a *nolle prose-qui* entered by the prosecuting officers against his will, or by a discharge of the jury and continuance of the cause." (Cooley's Const. Lim. (15 Ed.), 404.) Mr. Bishop says: "But when, according to the better opinion, the jury, being full, is sworn and added to the other branch of the court, and all the preliminary things of record are ready for the trial, the prisoner has reached the jeopardy, from the repetition of which our constitutional rule protects him." (1 Bish Cr. Law (7 Ed.), 1015;) see especially Weaver v. State, (Ind. Supreme Court, Oct 1882) reported in 4 Crim. L. Mag. p. 27 and note.)

Following in the wake of these authorities this court has said in Vestal v. The State, 3 Texas Court of Appeals, page 652: "It seems now to be quite as well settled by authority as reason that when a party is once placed upon his trial for a public offense, involving life or liberty on a valid indictment, before a competent court, with a competent jury empannelled, sworn and charged with the cause, he has reached and is placed in jeopardy, from a repetition of which upon the same indictment or any other indictment for the same offense, this constitutional shield forever protects him; and after jeopardy has once so attached a discharge of the jury without the consent of the defendant, before they have returned a verdict, is equivalent to a verdict of acquittal. (See also the word "jeopardy" defined in conformity with these authorities and others, 1 Bouv. Law Dic., p. 1.)

We are aware that a different rule has been enunciated from the one here laid down by the Supreme Court in the cases of Moseley v. the State (33 Tex., 671) and Taylor v. The State (35 Tex., 97), which cases are hereby overruled on this point.

This construction of the term jeopardy in our constitution being the proper one as settled by the decisions of the courts before the constitution was adopted, it is to be presumed that the word was was used in that sense when our constitution makers put it into the constitution. Thomas v. State 40 Tx. 36 Parchman v. State 2 T. Ct. App. 228.

If this be so, then it must follow that the legislature had no authority to give it another and a different meaning from that which it must have been intended it should have. And it must further follow that the attempted act on the part of the legislature was without

authority and is not binding on the courts. If the views heretofore expressed with regard to jeopardy be correct then the appellant in this case was, as shown by his bill of exceptions, in legal jeopardy when the jury trying him was discharged by the court. The question now is: Was the discharge of the jury by the court without his consent, and over his objections, such an infringement of his constitutional rights as would enable him to plead it successfully to a second prosecution under the same indictment? Our statute provides, "the jury may be discharged after the cause is submitted to them, when they can not agree and both parties consent to their discharge, or where they have been kept together for such time as to render it altogether improbable they can agree ; in this latter case the court, in its discretion, may discharge them." [C. C. P., art. 701].

We might, with great plausibility and supported by the great weight of authority, assume the position that the legislature in making it discretionery with the court to discharge the jury, except in cases of extreme necessity, is also an usurpation of authority, which they had no power to exercise, in view of the constitutional restrictions with regard to jeopardy. This question we do not feel called upon to decide in this particular case. In the well considered opinion in the case of Parchman v. State, J. P. Ector enunciates the law thus :

" We believe, after a careful examination of the authority, that if the court had no jurisdiction of the cause, or of the indictment was so defective that no valid judgment could be rendered upon it, or if, by any regular necessity, the jury are discharged without a verdict— which might happen from the sickness or death of the judge or the court, or the inability of the jury to agree upon a verdict after sufficient deliberation and effort—or if the term of the court, as fixed by law, comes to an end before the trial is finished or the jury discharged with the consent of the defendant, expressed or implied, or if after verdict against accused it has been set aside on his motion for new trial or in arrest of judgment, the accused may in all such cases again be put upon trial for the same facts charged against him, and the proceedings had will constitute no protection." [Weaver v. State *supra*].

Under the statute above quoted, if said statute be held as constitutional, the court is empowered with discretion to discharge a jury

without the consent of the prisoner " where they have been kept together for such time as to render it altogether improbable they can agree." This discretion then must be measured by the time they are kept together, since the improbability that they will agree is made to depend upon the time. Now was the time as shown by the bill of exceptions in the case, sufficient to warrant the court in the exercise of its discretion to discharge them ? The jury, when they first returned into court, had been out one hour and a half. When they returned a second time they had been out one hour, making two hours and a half. The third time they were out one hour longer, making in all three hours and a half, after which they were discharged by the court. In his explanation, the learned judge states that " the court held that the jury had been out a reasonable time." Reasonable time was not the measure of his discretion. The jury must " have been kept together for such a time as to render it altogether improbable that they can agree." Would three hours and a half be such a time as would necessarily render it altogether improbable that they could agree ? Not that they would, but that they *could* agree.

We think not, and so believing are of opinion that the court abused his discretion in thus discharging the jury, to the injury of the defendants rights. The other reasons given by the learned judge do not help the matter, which was solely a question of time. A mature consideration of the whole question has led us to the conclusion that, in law, appellant's former jeopardy was well pleaded, and that the court erred in instructing the jury to find the plea untrue. The judgment is reversed and the prosecution is dismissed.

Reversed and dismissed, White, P. J.

N. B.—A motion for rehearing has been filed by the Attorney General and the case has been transferred to Tyler.—[Ed.